E-FILED
Tuesday, 05 July, 2022  12:42:41 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

|  |  |
|---|---|
| MARY B.D.,<br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>        Defendant. | Case No. 1:21-cv-01083-JES-JEH |

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 12), the Defendant's Motion for Summary Affirmance (Doc. 15), and the Plaintiff's Reply (Doc. 17).  This matter has been referred for a report and recommendation.  The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be denied and the Defendant's Motion for Summary Affirmance be granted.[1]

**I**

Mary B.D. filed an application for disability insurance benefits (DIB) on January 15, 2019, alleging disability beginning on January 10, 2019.  Her DIB claim was denied initially on September 24, 2019 and upon reconsideration on March 26, 2020.  Mary filed a request for hearing concerning her application which was held on July 21, 2020 before the Honorable Deborah E. Ellis (ALJ).  At the hearing, Mary was represented by an attorney, and Mary, a vocational expert (VE), and Mary's husband testified.  Following the hearing, Mary's claim was denied on September

---

[1] References to the pages within the Administrative Record will be identified by AR [page number].  The Administrative Record appears at (Doc. 9) on the docket.

10, 2020.  Her request for review by the Appeals Council was denied on February 2, 2021, making the ALJ's Decision the final decision of the Commissioner.  Mary timely filed the instant civil action seeking review of the ALJ's Decision on March 5, 2021.

## II

Mary argues the ALJ committed the following errors:  1) the ALJ impermissibly cherry-picked the record and mischaracterized physical therapist Lanny Slevin, PT, CMPT's December 2, 2019 Functional Capacity Evaluation to find Mary not disabled; 2) the ALJ erroneously assessed opinion evidence of record; 3) the ALJ failed to adequately confront Mary's inability to sustain activity and her need to lay down for most of the day in light of the narrative requirements of SSR 96-8p and the credibility requirements of 16-3p; 4) the credibility assessment is patently wrong; and 5) the appointment of Andrew Saul as a single Commissioner of SSA, who was removable only for cause and serves a longer term than the President, violates separation of powers, accordingly, the decision in this case, by an ALJ and Appeals Council judges who derived their authority from Mr. Saul, is constitutionally defective.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence.  *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989).  Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).  The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper

legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

1:21-cv-01083-JES-JEH   # 18   Filed: 07/05/22   Page 4 of 22

4)       is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5)       is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Mary claims error on the ALJ's part at Step Four.

## A

At Step One, the ALJ determined Mary had not engaged in substantial gainful activity since January 10, 2019, the alleged onset date. At Step Two of the disability analysis, the ALJ determined Mary had the following severe impairments: cervical and lumbar spine degenerative disc disease; osteoarthritis affecting the left foot/right shoulder; fibromyalgia; and psoriatic arthritis. At Step Three, the ALJ determined Mary did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except, she can frequently climb ramps/stairs and occasionally climb ladders, ropes or scaffolds; frequently balance and stoop, and occasionally kneel, crouch and crawl; frequently reach bilaterally in all directions, including overhead; may utilize a computer screen frequently during the day – 2/3 of the day; after sitting for 45 minutes, has to stand and move around at the

4

workstation for about 3 to 4 minutes during hours wherein no regular breaks; can occasionally use foot controls on the left; and is expected to be off task up to 10 percent of the workday.

AR 32.  In comparing that RFC with the physical and mental demands of Mary's past relevant work, the ALJ found Mary could perform her past relevant work as a registration clerk and as a sales support representative.  The ALJ made the alternative finding at Step Five that there were jobs that existed in significant numbers in the national economy that Mary could perform.  Thus, the ALJ concluded Mary had not been under a disability from January 10, 2019 through the date of the Decision.

**B**

The Court begins with Mary's third and fourth arguments pertaining to the ALJ's subjective symptom evaluation.  In particular, Mary argues that medical professionals throughout the record agreed the record was *not* absent of evidence demonstrating Mary's significant physical or mental deficits, the ALJ played doctor to undermine Mary's credibility, the ALJ failed to consider Mary's strong work record, the ALJ did not adequately confront the evidence, and the ALJ impermissibly failed to explain what medical opinions or evidence justified the imposed RFC limitations.  The Commissioner counters that the ALJ carefully compared Mary's allegations with the evidence and reasonably determined the record did not support the full extent of symptoms alleged.

SSR 16-3p  provides that all the evidence, including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms and also the factors set forth in 20 C.F.R. § 404.1529(c)(3) are to be considered including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-

medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. SSR 16-3p, at *7-8. Here, the ALJ considered Mary's daily activities as testified to at the hearing and as reported to medical providers, her use of medications, her attendance at physical therapy, her use of a heating pad to soothe her symptoms, the activity she engaged in which aggravated her symptoms, and her alternation between sitting and standing to address pain.

The ALJ detailed the objective medical evidence of osteoarthritis, history of spinal fusions, lumbar and cervical degenerative changes, cervical spinal stenosis and adhesive capsulitis of the right shoulder, cervical disc arthroplasty, reduced shoulder range of motion, and reduced range of motion in the lumbar spine. While Mary testified that she had constant pain, numbness, and weakness in the neck, shoulder, and lumbar spine with radiation to her upper and lower extremities, the ALJ pointed to records where Mary presented as pleasant and comfortable, described herself as active and reported she did all activities of daily living, and was taking her medications as prescribed with no reported side effects or limited response/benefit of medications. The ALJ also cited records where Mary stated she was "not really painful lately . . . I feel pretty good" and indicated she would be starting a new job as a bank teller after completing 11 of 12 physical therapy visits, where Mary was "working full time at a regular job" in May 2019, where Mary stated physical therapy was beneficial to her, where Mary was described as "looks very good" and "remarkably better already with respect to pain" following a cervical diskectomy in July 2019, where Mary acknowledged improvement on the right following surgical intervention, where Mary's ambulation showed no indications of any physical distress, and where Mary

reported 80 percent improvement in her neck symptoms.  AR 34 (citing AR 486); AR 34 (citing AR 533); *id.* (citing AR 757).

The ALJ did not merely discuss the foregoing, she then explicitly connected the dots between that evidence and her conclusions as to the limiting effects of Mary's symptoms.  *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning").  Though she underwent a cervical disc arthroplasty in July 2019, Mary's impairments were treated with "relatively routine, conservative management."  AR 36.  Compared with her hearing testimony, Mary's medical file was "absent evidence demonstrating any significant physical or mental deficits that would account for the reported level of limited functionality."  *Id.*  Though Mary had multiple pain complaints,

> the bulk of related evidence documents normal range of motion in the majority of the remaining areas [beside some intermittent reduction in cervical and lumbar range of motion during some physical exams during the relevant period], including in the hips, knees, ankles/feet, and hands; normal gait with unassisted ambulation; and normal sensory and motor function with claimant remaining neurologically intact.

*Id.*  The ALJ observed that despite her alleged onset of disability in January 2019, Mary started a new job as a bank teller in March 2019.  After noting there were no ongoing instances of debilitating weakness or balance issues, no evidence of persistent edema in the extremities, and evidence of generally mild and stable (and somewhat infrequent) psoriatic skin lesions, the ALJ observed Mary's condition appeared "generally well-controlled and stable with compliant medication management."  AR 37.

If all that was an insufficient narrative/explanation for how the ALJ considered the objective medical evidence and relevant factors in evaluating the intensity, persistence, and limiting effects of Mary's symptoms, the ALJ continued in conformity with SSR 16-3p. *See* SSR 16-3p, at *8 ("We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions"). She emphasized that Mary worked throughout the period in question and reported engaging in relatively normal daily activities despite her allegations. Mary's allegations of limited capacity for sitting, standing, walking, lifting, and carrying were "outweighed by objective evidence . . . that [is] negative for abnormalities to suggest the same degree of limitation in function." AR 37. The ALJ stated she gave Mary the full benefit of the doubt by taking into consideration Mary's multiple pain complaints as well as her fibromyalgia. Nevertheless, the RFC finding "accurately [took] into consideration claimant's allegations of fibromyalgia" where there was "no consistent evidence of 'widespread' pain or any consistent evidence of at least 11 positive tender points on physical examination that would substantiate any greater degree of restriction." AR 38. Because of Mary's headache allegations, the ALJ incorporated a limited use of a computer screen to frequently during the day, and she explained there was "no evidence in the file that supports any greater restrictions specifically related to headaches." *Id.*

A full reading of the ALJ's Decision defies Mary's contention that it was unclear what specific medical evidence informed the particular limitations the ALJ set forth in the RFC and how they specifically addressed *the extent of Mary's ability*

*as actually supported by the record* to sustain activity.[2]  The ALJ's articulation of the record evidence (medical and otherwise) and how she reconciled conflicting evidence also defies Mary's contention that she did not describe how the evidence supported each conclusion with citation to specific medical facts and nonmedical evidence.  *See* SSR 96-8p, at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)" and "[t]he adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved").  The ALJ's articulation, moreover, was sufficient explanation for why she did not fully accept Mary's testimony as to her need to lay down or take a break after being active for only five to 10 minutes.

True, the ALJ did not repeat each and every statement of limitation which Mary testified was caused by her impairments and attendant symptoms, but the ALJ was not required to do so.  *See Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) (stating that an ALJ is not required to address in writing every piece of evidence or testimony presented but is required to provide an accurate and logical bridge between the evidence and his conclusions).  True, also, the limitations the ALJ incorporated into the RFC make no reference to Mary's inability to walk for prolonged periods, but that is because the ALJ found the record as a whole (upon proper consideration of the requisite factors) did not support that level – inability – of limitation.  None of Mary's challenges to the ALJ's subjective symptom

---

[2] Naturally, Mary asserts the ALJ failed to address her "*inability* to sustain activity." Plf's MSJ (Doc. 13 at pg. 20).  But an ALJ does not premise a review of a claimant's record on the claimant's inability to perform work.  Instead, via the requisite subjective symptom evaluation, the ALJ must consider all of a claimant's symptoms and then "determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms *can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work*."  20 C.F.R. § 404.1529(a) (emphasis added).

evaluation overcome the fact that the ALJ provided an accurate and logical bridge between the evidence and her conclusion that:

> Disability findings cannot be based solely on claimant's subjective complaints or her hearing testimony. While the evidence establishes some limitations, overall, the evidence supports a maximum, remaining [RFC] for less than the full range of light work, with the additional postural and manipulative restrictions identified.

AR 37. Mary would have the Court believe the ALJ rejected Mary's complaints of pain and limitation in their entirety. The very specific additional limitations the ALJ incorporated into the RFC finding and her reasons for doing so tell a different story. Those reasons, in turn, are not overcome by the single fact that Mary had, as she puts it, a strong work record. *See Prill v. Kijakazi*, 23 F.4th 738, 747 (7th Cir. 2022) (reiterating that work history "is just one factor among many," is not dispositive, and does not "operate to negate other evidence that supports an ALJ's adverse credibility finding"). Lastly, Mary's reliance upon medical opinions of record to show the ALJ erred in her subjective symptom evaluation is somewhat misplaced. The ALJ separately and properly, as discussed *infra*, considered the medical opinions of record, and, in any event the ALJ was required to "all of the available evidence" in her consideration of the intensity and persistence of Mary's symptoms. 20 C.F.R. § 404.1529(a). The ALJ's subjective symptom analysis was not patently wrong. *See Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022) (reiterating that the Seventh Circuit court of appeals "will uphold an ALJ's credibility determination unless that determination is patently wrong'"); *and Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014) (explaining "patently wrong" means "the decision lacks any explanation or support").

## C

Mary also argues that the ALJ materially and harmfully misrepresented a December 2, 2019 Functional Capacity Evaluation (FCE) performed by PT Slevin,

and Slevin's June 19, 2020 clarification of the December FCE findings. She says the ALJ cherry-picked the record to incompletely highlight PT Slevin's assessment. Mary thus argues that had the ALJ comprehensively evaluated the results of the FCE, a different decision likely would have been reached in this case. She contends the ALJ's failure to properly review the FCE further compromised the assessment of treating rheumatologist Andrew Jasek, M.D.'s January 10, 2020 opinions. Mary also faults the ALJ's consideration of her primary care doctor Joel S. Leifheit, M.D.'s October 21, 2019 opinions for reasons including the ALJ's misrepresentation of the December 2019 FCE findings. The Commissioner asserts the ALJ's reliance on the conclusions of a State Agency physician – who reviewed the December 2019 FCE – constituted substantial evidence supporting that Mary was not more limited than the ALJ assessed. The Commissioner says the ALJ had additional reasons to doubt PT Slevin's FCE and FCE clarification, and it is Mary's narrow focus on the single FCE that cherry-picks the record. Finally, the Commissioner argues the ALJ adhered to 20 C.F.R. § 404.1520c in her evaluation of Dr. Jasek's and Dr. Leifheit's opinions.

1

PT Slevin's December 12, 2019 Bio-Ergonomics FCE indicated that Mary was onsite for 3.25 hours on one day, the preponderance of evidence indicated she participated fully in testing, and she gave consistent, acceptable effort. AR 971. Under "Assessment," PT Slevin wrote that, "The client should be able to function in the LIGHT work demand level for activity and LIGHT demand level for endurance." *Id*. (caps in original). Under "Recommendation/Plan," he wrote:

> Within a reasonable degree of medical certainty, it is my opinion that the worker can function on a full-time basis as follows:
>
> 1. Material Handling: Occasional: floor to waist 18#, waist to shoulder 13#, overhead 5#, 2 hand carrying 13#, push force 17#, pull

11

force 14#.  Frequent:  waist high 8#, shoulder high 8#, overhead 2#, 2 hand carrying 6#.
2.  Non-Material Handling:  Occasional:  sitting, standing, walking, bending, squatting, all reaching, climbing, kneeling and crawling. Frequent: grip and fine motor. Constant: Nothing. Avoid: increased repetition, higher frequency, and longer duration activity.

AR 971-72.  PT Slevin also indicated that Mary had difficulty performing increased activity without rest periods, and "[s]he was able to tolerate activity with breaks for 3.25 hours prior to termination.  This is not even a half of a full work day."  AR 972.  He stated in bold, "She would not be able to return to her job given her duties and condition."  *Id.*  In his June 19, 2020 letter clarifying the results of the December 2019 FCE, PT Slevin summarized that Mary:  was unable to perform increased activity without multiple breaks; experienced increased symptoms with increased exertion; was able to perform some activity, but wasn't comfortable performing longer duration activity; continued to have strength deficits; and was able to tolerate 3.25 hours of activity with breaks prior to termination and needed to stop all activity.  AR 1120.  PT Slevin also highlighted a portion of the assessment wherein Mary could tolerate all positional activities on an occasional basis (except for grip and fine motor).  *Id.*  Pt Slevin thus stated, "Given the above information for her activity, positional tolerances, and symptom increases, within a degree of medical certainty, it is my professional opinion that Mary [] can function on a limited part-time basis (up to 3.25 hours/day) as per the FCE . . . and would not tolerate full time employment."  *Id.*

In her Decision, the ALJ explained that PT Slevin's final assessment in the December 2019 FCE was that Mary should be able to function in the light work demand level for activity and endurance.  The ALJ found PT Slevin's opinion persuasive "only to the extent it is consistent with the indicated [RFC]."  AR 39. The ALJ further explained the ultimate finding of "disability" and the degree to

which an individual's impairments impacted their remaining functional abilities were ultimately issues reserved to the Commissioner, and PT Slevin was not an acceptable medical source.  As for PT Slevin's June 2020 clarification, the ALJ explicitly repeated, verbatim, Slevin's statement that Mary could function on a limited part-time basis (up to 3.25 hours/day) per the FCE and that Mary would not tolerate full time employment.  The ALJ reasoned:  1) there was no indication that any reexamination was completed in order to arrive at that conclusion six months later; 2) "[n]oteworthy, this source's conclusions following the initial FCE in December 2019 was that "within a reasonable degree of medical certainty, it is my opinion that the worker can function on a full-time basis;" 3) the opinion was not changed until reconsideration/clarification was prompted by Mary's representative; and 4) "[a]t any rate, however, in addition to the degree of limitation/restriction lacking sufficient objective medical and other support, this examiner remains an unacceptable medical source."  AR 40.

Though a close call, the Court finds that under these particular circumstances, the ALJ did not commit reversible legal error in her consideration of PT Slevin's FCE.  Tipping the analysis in favor of the Commissioner is the fact that the ALJ did not cherry pick the FCE as Mary insists she did.  Had the ALJ completely omitted discussion of PT Slevin's statement that Mary could only function on a limited part-time basis (up to 3.25 hours/day) and would not tolerate full time employment, the Court could not help but find the ALJ cherry-picked the evidence of record.  But, of course, the ALJ did not make such an omission.  To rely on a very specific portion of the FCE (as Mary does in her Reply) detailing Mary's performance "[d]uring testing" is to disregard the fact that an ALJ "need not specifically address every piece of evidence."  Plf's Reply (Doc. 17 at pg. 3 n.6); *Wilder*, 22 F.4th at 651.

The ALJ, instead, detailed the crucial parts of the December FCE, namely, the succinctly stated assessment that Mary should be able to function in the light work demand level for activity and light demand level for endurance and the recommendation/plan that Mary could function on a full-time basis as Slevin specified therein.  The ALJ very cleary stated - after a detailed discussion of the record evidence and explanation illustrating how the medical file was absent evidence demonstrating any significant physical deficits that would account for the reported level of limited functionality – that PT Slevin's conclusions were generally consistent with the preponderance of the medical and other evidence in the file.  That the ALJ found the conclusions less favorable to Mary's claim of disability in the FCE were the more persuasive is not inherently suspect, particularly where the ALJ explained why she found as she did.  *See Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021) (rejecting claimant's argument that ALJ's partial summary of select medical evidence was insufficient because summaries are appropriate, and the claimant did not show any reason to think the ALJ's summary or determinations were not supported by substantial evidence).  The ALJ listed several reasons for *not* finding PT Slevin's opinion more persuasive; those reasons were valid per 20 C.F.R. § 404.1502(a), 20 C.F.R. § 404.1520b(c)(3), and 20 C.F.R. § 404.1520c.  The ALJ not only sufficiently traced the path of her reasoning with regard to the FCE, she cited substantial evidence in support of it. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (reiterating that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and noting that it presents a threshold for evidentiary sufficiency that is "not high").  The ALJ likewise sufficiently articulated her reasons for finding unpersuasive PT Slevin's June 2020 clarification.

14

**2**

As for Mary's argument that the ALJ's failure to properly review the FCE further compromised the assessment of treating rheumatologist Dr. Jasek's opinions, the argument fails in light of the Court finding that the ALJ properly considered PT Slevin's FCE and his clarification. As for Dr. Jasek's separate Fibromyalgia and Rheumatoid Arthritis Questionnaires dated January 10, 2020 (which referred to PT Slevin's FCE), the ALJ found them generally unpersuasive for several reasons. The ALJ explained the degree of restriction indicated lacked sufficient objective medical and other support. Again, the ALJ had already addressed what the "bulk" of medical evidence documented (normal findings), and she specified how the indicated RFC incorporated Mary's alleged limitations that were reasonably supported by the evidence. The ALJ "especially note[d]" Dr. Jasek's findings concerning fibromyalgia and resulting limitations, and she explained "[i]ndications for extensive fatigue, numbness, tingling, nervousness, and depression and anxiety as ongoing, repeated manifestations is not shown in the records." AR 40. Lastly, the ALJ found "[n]oteworthy," Dr. Jasek's finding of a "good" (Dr. Jasek's word) prognosis. *Id*. (citing AR 928). While Mary argues that an ALJ must give good reasons for discounting the opinion of a treating physician, the Court notes that an ALJ was required to do so per 20 C.F.R. § 404.1527 which applies to claims filed *before* March 27, 2017. *See also* SSR 96-2p, at *5 (rescinded). Mary filed for DIB in January 2019. Per the regulation applicable to Mary's claim – 20 C.F.R. § 404.1520c – the ALJ was not required to defer to any medical opinions, including those from Mary's medical sources.

Section 404.1520c provides that the factors of supportability, consistency, relationship with the claimant, specialization, and other factors that "tend to support or contradict a medical opinion" will be considered. 20 C.F.R. § 404.1520c(c)(1)-(5). However, Section 404.1520c(a) states very clearly that the most

important factors considered when evaluating the persuasiveness of medical opinions are supportability and consistency. Here, the ALJ obviously considered the supportability and consistency of Dr. Jasek's opinions with the record as a whole, and so the ALJ gave good reasons for finding those opinions "generally unpersuasive overall." AR 40. Though Mary argues her C-reactive protein (CRP)[3] value was an objective indicator that supported Dr. Jasek's opinions, that was one piece of objective information among many others. Interestingly, of the two CRP results Dr. Jasek reviewed before he rendered his January 2020 opinions citing Mary's elevated CRP value as supportive of his diagnosis[4], the more recent one was normal. *See* AR 545 (CRP of 16.5 reviewed by Dr. Jasek on 2/27/2019); *compare* AR 884 (CRP of 1.5 reviewed by Dr. Jasek on 11/13/2019). To the extent Mary emphasizes the length of her treatment relationship with Dr. Jasek (three visits prior to rendering his opinion) and his specialized knowledge (rheumatology), Mary would have the Court impermissibly reweigh the evidence. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999) (providing that a reviewing court "may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled"). As for Dr. Jasek's specialization, the fact that the ALJ highlighted a dearth of positive findings as to fibromyalgia contradicts the suggestion that the ALJ failed to consider Dr. Jasek's specialization. The ALJ similarly abided by the Section 404.1520c when she found unpersuasive Dr. Jasek's August 2020 statement that he "agree[d] with" PT Slevin's FCE clarification. She detailed that there was no indication for anything new or concerning on exam the same day (August 7, 2020)

---

[3] "CRP levels are sometimes monitored serially to determine if infectious or inflammatory diseases have been effectively treated." Taber's Online, https://www.tabers.com/tabersonline/view/Tabers-Dictionary/741174/all/protein#20 (last visited June 30, 2022).

[4] *See Allen v. Astrue*, No. 10 C 994, 2011 WL 3325841, at *12 (N.D. Ill. Aug. 1, 2011) ("A mere diagnosis does not establish functional limitations, severe impairments, or an inability to work").

that would justify Dr. Jasek's agreement with the FCE clarification, and Dr. Jasek did not give any reason as to why he agreed with it. The record bears that out: Dr. Jasek's examination findings on November 12, 2019 were similar to those on August 7, 2020, and Dr. Jasek stated no more than he agreed with the FCE clarification. Notably, Mary does not point to anywhere in Dr. Jasek's own treatment notes that contradict the ALJ's stated reasons for rejecting his August 2020 statement of agreement.

**3**

Mary challenges the ALJ's assessment of Dr. Leifheit's October 21, 2019 opinions due to the ALJ's alleged failure to address Dr. Leifheit's treatment note that same day which assessed cervical imaging, diagnosed cervical radiculopathy, and concluded Mary could not stand or sit for more than a half hour at a time due to pain and muscle fatigue. The same information – cervical radiculopathy and Mary's limitation in sitting and standing for less than one hour each – is in both Dr. Leifheit's October 21, 2019 treatment note and his October 21, 2019 Multiple Impairment Questionnaire. The Commissioner says although the ALJ did not cite to the page where Dr. Leifheit documented part of his opinion in his treatment notes, it matters not because the Questionnaire the ALJ did cite contained Dr. Leifheit's opinion on Mary's limitations. The Court agrees with the Commissioner.

Mary cannot seriously be arguing that Dr. Leifheit's October 2019 is more fully supported by the record than the ALJ acknowledged by way of the *exact same* information on the *exact same* date, albeit set forth in a different document. More to the point, the ALJ cannot be faulted for failing to explicitly discuss Dr. Leifheit's treatment note where the ALJ explicitly discussed the Questionnaire containing the exact same information. In any event, the ALJ *did* cite the very record Mary says the ALJ ignored, and the cervical spine MRI taken on October 3, 2019 included

17

the following impression: "1. Small right paramedian disc protrusion/herniation at T6-7 with mild effacement of the ventral thecal sac but no cord flattening or compression displacement; 2. Developmentally small central bony spinal canal at C3-4, C3, and the craniocervical junction without compression of the cord; and 3. No reliable information can be gathered from C5, C6, or its disc due to the substantial artifact." AR 922-23. Such an impression is hardly a smoking gun in light of the balance of record evidence the ALJ relied upon in finding Dr. Leifheit's opinions unpersuasive.

As for Mary's assertions that the ALJ failed to properly consider (or consider at all) Dr. Leifheit's longitudinal treatment relationship with Mary and Dr. Leifheit's opinion as reinforced by the FCE, those arguments fail for the same reasons they fail as to the ALJ's consideration of Dr. Jasek's opinions. In fact, the Commissioner makes a good point with regard to the longitudinal treatment relationship: Dr. Leifheit only saw Mary twice during the adjudicatory period and at both times, Mary ambulated normally and presented in no acute distress, and in July 2019 she retained full motor strength, exhibited normal range of motion in her arms and legs, and had intact sensation.

Ultimately, the ALJ sufficiently articulated her reasons for the discrete conclusions she reached in her Decision, and her conclusions are supported by evidence a reasonable mind would accept as adequate to support those conclusions. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). The ALJ thus did not commit legal error by failing to find opinions of record less persuasive than Mary would have preferred. That the ALJ's Decision was supported by substantial evidence and was free of harmful error is bolstered by that fact that ALJ found the State Agency medical consultants' opinions that Mary was limited to light exertion with some additional postural restrictions "generally persuasive." AR 38. The second State Agency medical consultant considered PT Slevin's

December 2019 FCE and the October 3, 2019 cervical imaging and nevertheless concluded as he did. *See* AR 149-150. Lastly, Mary is mistaken that the ALJ played doctor to the extent she did not base her RFC finding on an expert opinion and other evidence. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions any of the claimant's physicians"); 20 C.F.R. § 404.1545(a) ("We will assess your residual functional capacity based on *all the relevant evidence* in your case record") (emphasis added).

## D

Mary's final attempt for remand in this case fails too. She argues that the Social Security Administration's (SSA) structure is unconstitutional as it violates separation of powers where the Commissioner of SSA serves for a longer term than the President and cannot be removed by the President except for cause. *See Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183, 2197 (2020) (holding that the CFPB's "leadership by a single, individual removable only for inefficiency, neglect, or malfeasance violates the separation of powers"). Here, the parties agree that 42 U.S.C. § 902(a)(3) violates the separation of powers "to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." Dft's MSA (Doc. 16 at pg. 6); 42 U.S.C. § 902(a)(1) (stating the Commissioner "shall be appointed by the President . . . "); *and* 42 U.S.C. § 902(a)(3) (stating the "Commissioner shall be appointed for a term of six years," and "An individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office"). However, the Commissioner argues that Mary's separation of powers argument nevertheless does not entitle her to a rehearing of her disability claim because: 1) the ALJ who denied Mary's claim was not appointed by a Commissioner subject to Section 902(a)(3)'s removal restriction; 2) even if the

19

deciding ALJ had been appointed by a tenure-protected Commissioner, Mary would also need to show that Section 902(a)(3)'s removal restriction caused the denial of her benefits which she has not and cannot do; and 3) a variety of other legal doctrines – harmless error, de facto officer, the rule of necessity, and broad prudential considerations – reinforce the clear takeaway from a relevant, recent Supreme Court case that Mary is not entitled to relief simply because Section 902(a)(3) violates the separation of powers.

The Court adopts the reasoning set forth in the cases within this Circuit that have rejected Social Security claimants' separation of powers arguments like the one Mary makes here.  In *Michelle D. v. Kijakazi*, the Illinois district court rejected the claimant's arguments because *Seila Law LLC* and *Collins v. Yellen*, 141 S. Ct. 1761 (2021), provided the claimant no relief.  No. 21 CV 1561, 2022 WL 972280, at *6 (N.D. Ill. Mar. 31, 2022); *see Collins*, 141 S. Ct. at 1784, 1787-89 (finding the restriction in removing the Federal Housing Finance Agency's single director only "for cause" in the Housing and Economic Recovery Act of 2008 violated separation of powers, but explaining a plaintiff must demonstrate the unconstitutional restriction "inflict[ed] compensable harm" in order to be entitled to relief).  The *Michelle D.* court concluded:    "Former Commissioner Saul was properly appointed. So was Acting Commissioner Kilolo Kijakazi. Both had the lawful authority to deny plaintiff's application at all points in the process, and there's nothing to suggest that section 902(a)(3)'s limits on the President's removal authority had any bearing on this case."  No. 21 CV 1561, 2022 WL 972280, at *6.  In *Schwechel v. Kijakazi*, the Wisconsin district court rejected the claimant's constitutional challenge because she failed to articulate any basis for finding she was harmed by the SSA's structure.  No. 20-cv-700, 2022 WL 135022, at *5 (W.D. Wis. Jan. 14, 2022) (citing *Seila Law LLC* and *Collins*).  In *Vicki L.H. v. Kijakazi*, the Indiana district court determined the claimant's constitutional separation of

powers claim failed where an agency "may continue to exist and operate notwithstanding Congress's unconstitutional attempt to insulate the agency's Director from removal by the President," where the claimant did not argue that either the former Commissioner of former Acting Commissioner of SSA played an active role in denying her claim for benefits, and where she did not allege that the President would have intervened to stop the former Commissioner of forming Acting Commissioner from acting if not for the unconstitutional removal clause. No. 21-cv-032, 2022 WL 1538545, at *6-7 (N.D. Ind. May 16, 2022) (quoting *Seila Law LLC*, 140 S. Ct. at 2207-08, and citing *Collins*). The *Vicki L.H.* court also pointed out in rejecting the claimant's constitutional challenge, which the Commissioner points out in this case, that the ALJ who issued the final decision denying the plaintiff's claim was not appointed by a Commissioner subject to the unconstitutional removal clause. *Id*. at *7. Instead, the ALJ was appointed by an Acting Commissioner of Social Security "who could be removed at any time by the President." *Id*.

At this point, several courts in this Circuit, in rejecting the separation of powers argument such as Mary's here, have observed their rejection of the argument is in keeping with vast majority of cases having recently considered the question. *See, e.g.*, *Green v. Kijakazi*, No. 21-C-678, 2022 WL 1644936, at *24-25 (E.D. Wis. May 23, 2022) (collecting cases); *Darlene M.F. v. Kijakazi*, No. 21-cv-053, 2022 WL 1153506, at *3 (N.D. Ind. Apr. 19, 2022) (collecting cases). This Court similarly rejects Mary's separation of powers argument.

## IV

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 12) be denied; 2) the Defendant's Motion for Summary Affirmance (Doc. 15) be granted; 3) The Clerk of Court be directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision

of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, denying benefits to the Plaintiff, Mary B.D., is AFFIRMED."; and 4) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on July 5, 2022.

<u>s/Jonathan E. Hawley</u>
U.S. MAGISTRATE JUDGE