E-FILED
Wednesday, 28 September, 2022  11:29:53 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARY B.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-cv-1083-JES-JEH |
| | ) | |
| COMM'R OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

This matter is now before the Court on the Report and Recommendation ("R&R") (Doc. 18) of Magistrate Judge Hawley advocating the denial of Plaintiff's Motion for Summary Judgment (Doc. 12), and the granting of Defendant's Motion for Summary Affirmance (Doc. 15). Plaintiff has filed an Objection (Doc. 19) and Defendant has Responded (Doc. 20). For the reasons set forth below, the Court declines to fully adopt the R&R, instead GRANTING in part and DENYING in part, Plaintiff's Motion for Summary Judgement. The Court REVERSES the Decision of the Commissioner and REMANDS to the Administrative Law Judge ("ALJ") for further proceedings consistent with this Order. This case is now TERMINATED.

### JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claims asserted in the Complaint present federal questions under 42 U.S.C. § 405(g) and 42 U.S.C. 1383(c)(3). (ECF No. 1).

### BACKGROUND

On January 15, 2019, the Plaintiff filed a Title II application for disability insurance benefits, alleging a disability beginning on January 10, 2019. The claim was denied on September 24, 2019, and the denial affirmed upon reconsideration on March 26, 2020. On July

1

21, 2020, the matter went to hearing before the Honorable Deborah E. Ellis ("ALJ"). The hearing was conducted by telephone due to the Covid-19 Public Health Emergency. The Plaintiff, Plaintiff's husband, and an impartial vocational expert ("VE"), Taylor M. Kerkhoff, testified. Plaintiff's attorney, Mark A. Wilson, also attended.

On September 10, 2020, ALJ Ellis issued a decision unfavorable to the Plaintiff. (AR 24). Plaintiff's subsequent request for review was denied by the Appeals Council, making the ALJ's Decision the final decision of the Commissioner. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Plaintiff has filed a timely Objection, asserting that the ALJ did not give sufficient weight to the opinions of Plaintiff's treating source physicians, erroneously assessed Plaintiff as having a Residual Functional Capacity ("RFC")[1] for light duty work (AR 42), and mischaracterized the findings of the December 2, 2019, Functional Capacity Evaluation ("FCE"). Plaintiff also asserts that the decisions of the ALJ and Appeals Council are void as the appointment of Andrew Saul, who was the Social Security Commissioner when the relevant decisions were rendered, violated the separation of powers.

In addition to the hearing testimony, the ALJ reviewed records from Dr. Daniel Mulconrey, Dr. Said Bellal, Dr. Hulbert Do, Dr. Taiwo Afiz, Dr. Treator, Dr. Nenaber, Mark Langgut, Ph.D., St. Margaret's Center for Physical Rehabilitation, Illinois Valley Community Hospital, Rockford Orthopedic Associates, Summit Orthopedics, Midwest Orthopaedic Center, Ortho Illinois, OSF Healthcare, the Spring Valley Foot Clinic; and Plaintiff's treating source physicians, Drs. Joel Leifheit, and Andrew Jasek.

---

[1]Residual Functional Capacity reflects one's ability to do physical and mental work activities on a sustained basis despite limitations caused by impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

## PLAINTIFF'S TESTIMONY

The ALJ characterized Plaintiff's testimony, in part, as follows:

In her testimony, Claimant pointed to continuing residuals, including constant pain, numbness and weakness, associated with neck, shoulder and lumbar spine with radiation to the upper and lower extremities, with difficulty holding items in her hands at times, including her phone. She testified that she does not bathe daily due to difficulty associated with her impairments, and that she requires the assistance of her husband to help her get in and out of the tub. Plaintiff complained she cannot brush her hair and has difficulty with washing it because of the arm pain. She further testified to chronic fatigue, reporting she falls asleep throughout the day, has limited energy and concentration, and complained her discomfort is exacerbated by headaches. Plaintiff's husband, Michael Davis, was present during the hearing and provided testimony regarding the assistance he provides to her in the completion of general day-to-day activities, including getting out of the tub, getting in and out of the car, assisting with the laundry and cooking, and aiding with her with getting dressed.

(AR 33).

The ALJ determined, after considered Plaintiff's testimony, Plaintiff's statements in the record, the testimony of her husband and assertions by her counsel, that Plaintiff had severe impairments which resulted in some limited function. She determined, however, that the objective medical and other evidence failed to establish an impairment, or combination of impairments, sufficient to warrant greater restriction than as outlined in the RFC. *Id*.

## MEDICAL RECORDS EVIDENCE

In her decision, the ALJ found that Plaintiff had the following severe impairments; cervical and lumbar spine degenerative disc disease, osteoarthritis affecting the left foot/right shoulder, fibromyalgia, and psoriatic arthritis; all of which significantly limited her ability to perform basic work activities. The ALJ found that Plaintiff's medically determinable mental health impairments of depression and anxiety posed only a minimal limitation on her ability to

perform basic mental work activities. Plaintiff has not challenged this finding and it is not further considered.

The ALJ noted that Plaintiff had a history of having undergone lumbar spinal fusions in 2012 and 2015. On December 20, 2018, a date immediately before the January 10, 2019, date of disability, Plaintiff was examined by Dr. Belal and complained of constant right arm pain and weakness. Dr. Belal noted a history of cervical degenerative disc disease without nerve impingement. (AR 446 et seq.) On January 9, 2019, Plaintiff underwent x-rays of both shoulders which were positive for minimal degenerative changes at the AC joint. Plaintiff was thereafter referred for physical therapy at Saint Margaret's Center for Physical Rehabilitation.

On July 16, 2019, Plaintiff underwent a discectomy and arthroplasty at C 5-6 by Dr. Wills at Summit Orthopedics. (AR 750 et seq.) At the July 25, 2019, follow-up visit, Plaintiff was noted to have significant improvement in symptoms with the right arm pain "remarkably better." (AR 757).

On September 5, 2019, Plaintiff underwent a physical therapy evaluation at St. Margaret's as, while the right arm pain had decreased after the surgery, the left arm pain, previously mild, had gotten worse. Plaintiff indicated that the symptoms had increased after she returned to her job as a part-time bank teller. (AR 784). On September 6, 2019, Plaintiff had cervical spine x-rays which were essentially normal. (AR 861). On October 3, 2019, she had an MRI of the cervical spine which was positive for a small disc protrusion/herniation at T 6-7. (AR 862). The St. Margaret's records indicate that on October 22, 2019, Plaintiff reported the onset of low back pain two weeks prior, near the area of the previous lumbar fusions, and that she was off of work. (AR 853 et seq.)

On October 7, 2019, Plaintiff was seen by Dr. Brian Braaksma at OrthoIllinois in response to complaints of back pain. Plaintiff described the pain as sharp and stabbing, a 9 on a scale of 1-10, both at rest and with activity. Dr. Braaksma noted an acute onset of back pain and bilateral lower extremity radicular symptoms, greater on the left than the right. He ordered medication and a follow-up visit.

On October 28, 2019, Plaintiff was evaluated by Dr. Mulconrey at Midwest Orthopaedic Center for complaints of lumbar pain. The notes reveal that Plaintiff had been referred there after being seen at the Midwest Orthopedic Center First Care facility on October 14, 2019. The physical exam showed that all hardware from the prior L4 – S1 spinal fusions was intact and in place. No treatment was ordered, and Plaintiff was encouraged to follow-up on an as-needed basis. (AR 871).

On November 7, 2019, Plaintiff was seen at St. Margaret's and reported an 80% improvement in her neck pain which, at its worst, was 5-6 on a scale of 10. Plaintiff also complained of weakness with bending, squatting, and kneeling. A lumbar evaluation was conducted and reported as within normal limits. (AR 851).

On November 12, 2019, Plaintiff was seen at OrthoIllinois by her Treating Source rheumatologist, Dr. Andrew Jasek. (AR 882 et seq.) Dr. Jasek noted reduced range of motion and pain in the right shoulder. There was reduced range of motion in both the cervical and lumbar spine. Dr. Jasek diagnosed an acquired hallux valgus of the left foot. He also recorded the pre-existing history of psoriasis, plaque psoriasis, fibromyalgia, cervical spondylosis with radiculopathy, and the two spinal fusions.

On December 2, 2019, Plaintiff underwent an FCE at St. Margaret's by Lanny Slevin,

P.T., CMPT. Mr. Slevin found that Plaintiff had fully cooperated in the testing. It was his opinion

that Plaintiff could function at light work subject to the following findings:

> ongoing subjective complaints of pain in multiple regions, inability to stand or
> ambulate for longer than a few minutes without pain, decreased functional
> strength in the UE/LE, decreased tolerance to lifting, the inability to perform
> longer duration and higher intensity activity without increasing the pain, inability
> to perform her desired and required activities without increased pain.

(AR 971). In that same report, Slevin noted that the exam was conducted over 3.25 hours and

stated "SHE WAS ABLE TO TOLERATE ACTIVITY WITH BREAKS FOR 3.25 HOURS

PRIOR TO TERMINATION. THIS IS NOT EVEN HALF OF A FULL WORK DAY." (AR 972)

(emphasis in original). Seemingly contradictorily, he also stated that Plaintiff could work on a

full-time basis:

> Within a reasonable degree of medical certainty, it is my opinion that
> the worker can function on a full-time basis as follows:
>
> 1. Material Handling: Occasional: floor to waist 18#, waist to
> shoulder 13#, overhead 5#, 2 hand carrying 13#, push force 17#, pull force 14#.
> Frequent: waist high 8#, shoulder high 8#, overhead 2#, 2 hand carrying 6#.
> 2. Non-Material Handling: Occasional: sitting, standing, walking,
> bending, squatting, all reaching, climbing, kneeling and crawling.
> Frequent: grip and fine motor. Constant: Nothing. Avoid: increased
> repetition, higher frequency, and longer duration activity.

(AR 971). Slevin also found that Plaintiff would not be able to return to her former job

as a bank teller.

On June 19, 2020, Mr. Slevin responded to an inquiry by Plaintiff's counsel asking for

clarification as to the FCE findings. Slevin responded, in part, that Plaintiff was:

> unable to perform increased activity without multiple breaks [and] [w]ithin the
> parameters of an 8 hour day, activities that she would need to perform must meet
> this criteria: occasional 0-2.5 hours and frequent 2.5-5 hours. The recent FCE
> states she was able to tolerate 3.25 hours of activity with breaks prior to

terminating and needing to stop all activity. . .  [and] would not tolerate full-time employment.

(AR 1120). This last statement is at odds with that portion of the FCE Report finding that Plaintiff could work full time; and apparently consistent with the findings in that same report that Plaintiff was only able to tolerate 3.25 hours of activity, with breaks.

On September 22, 2020, Dr. Jasek, Plaintiff's treating rheumatologist, authored a letter indicating that he had reviewed Mr. Slevin's FCE and agreed with the findings, which he characterized as limiting Plaintiff to part-time work up to 3.25 hours per day. Dr. Jasek believed that this was reasonable as Plaintiff was disabled due to widespread joint pain from fibromyalgia, with fatigue and swelling. (AR 23).

On October 21, 2019, Plaintiff was seen by treating internist, Dr. Joel Leifheit. Dr. Leifheit completed a Multiple Impairment Questionnaire (AR 839 et seq.)  He listed Plaintiff's diagnoses as cervical radiculopathy, psoriatic arthritis, and fibromyalgia. Plaintiff's primary symptom that day was neck pain aggravated with movement. Dr. Leifheit noted that Plaintiff could sit less than one hour in an eight-hour workday and stand or walk less than one hour in an eight-hour workday. He noted that it was medically necessary that Plaintiff avoid continuous sitting, and that she be able to get up from a seated position for 10 minutes every 30 minutes. Dr. Leifheit noted that Plaintiff could frequently lift and frequently carry up to 5 pounds. He denied that Plaintiff had significant limitations in reaching, handling, or fingering. He opined that Plaintiff would need to take unscheduled work breaks every hour and would be absent from work more than three times a month.

In addition to the Questionnaire, Dr. Leifheit authored an October 21, 2019, office note in which he documented cervical radiculopathy, noting that Plaintiff "cannot stand or sit for more

than a half hour at a time due to pain and muscle fatigue." (AR 1019-20). The ALJ does not discuss this note, seemingly relying only on the documentation in the Questionnaire.

On December 9, 2020, Plaintiff was again seen by Dr. Jasek. The exam of that date was remarkable for reduced range of motion of the right shoulder, cervical, and lumbar spine. In addition, there was guarding, and discomfort noted at the cervical spine. Dr. Jasek also indicated that Plaintiff had been seen by Dr. Braaksma "for cervical spondylosis and disc space narrowing." (AR 14).

On December 20, 2019, Plaintiff underwent an Internal Medicine Consultative Disability Examination by Dr. Afiz Taiwo (AR 149 et seq.). Plaintiff asserted disability due to fibromyalgia, degenerative disc disease of the lumbar and cervical spine, and shoulder impingement. Plaintiff complained of throbbing pain into the arms and hands, worse on the right than the left, and reported dropping items from her hands. The lumbar pain was characterized as achy, burning, and stabbing; radiating down both legs to the toes. Plaintiff indicated that she had been diagnosed with bilateral shoulder impingement. In addition, three years prior, she had been diagnosed with fibromyalgia which was in her knees, elbows, and shoulders. Plaintiff gave a history of aching in the lumbar spine and joints when she walked, stood, or sat for prolonged periods. She indicated that when cooking, she alternated between sitting and standing. She also indicated that lifting, pulling, and pushing were limited due to joint pain.

Dr. Taiwo noted on physical exam that Plaintiff was able to get on and off the exam table without difficulty and Plaintiff could walk greater than 50 feet with a normal gait and without support. He noted tender trigger points over the hips, thigh, lumbar spine, arms, and, with normal range of motion of the shoulders, elbows, wrists, hips, knees, and ankles. There was limited range of motion of both the cervical and lumbar spine. Dr. Taiwo conducted a series of tests to

8

determine Plaintiff's range of motion in all joints, and well as her fine and gross motor skills. The results were essentially normal, with 5/5 grip strength in both hands with normal ability to grasp and manipulate objects. Dr. Taiwo listed Plaintiff's problems as fibromyalgia, degenerative disc disease of the cervical spine with limited active range of motion, and degenerative disc disease of the lumbar spine with limited active range of motion. (AR 1080).

On January 10, 2020, Dr. Jasek submitted both a Rheumatoid Arthritis and Fibromyalgia Impairment Questionnaire. (AR 1092 et seq.) There, he reaffirmed the diagnosis of psoriatic arthritis, noting that Plaintiff's prognosis was "good." He did not provide much detail in the Rheumatoid Arthritis report, generally referring to the FCE findings. He provided more detail as to the fibromyalgia. There, Dr. Jasek noted that Plaintiff experienced fibromyalgia pain in the neck, chest, abdomen, lower back, and upper back. He noted bilateral pain in the jaw, shoulder girdle, upper arm, lower arm, upper leg, lower leg, and hips. He noted, further, that Plaintiff experienced headache and numbness and tingling at unspecified sites. He noted cognitive symptoms of difficulty thinking, "fibro fog," and poor memory. He believed Plaintiff suffered from anxiety and depression which contributed to the severity of her symptoms and the functional limitations. As previously noted, however, Plaintiff is not contesting the ALJ's Decision regarding her medically determinable mental impairment.

## TESTIMONY OF VOCATIONAL EXPERT

At the time of the hearing, the ALJ posed a hypothetical to VE Kerkhoff, asking whether an individual of Plaintiff's age, with her education and prior work experience, who was limited to light duty could work with the following accommodations:

> frequently climbing ramps and stairs. Only occasionally ladders, ropes or scaffolding. Who can frequently balance, stoop. Only occasionally kneel, crouch and crawl. Who can frequently reach all directions bilaterally, including overhead. If she is sitting, after 45 minutes, would need to stand and move around at the

work station for about 3 to 4 minutes. That would be during hours wherein there were no regular breaks. Then, as I said, hours wherein she would be sitting. Only occasional use of foot controls on the left lower extremity and we're going to say she would be off task, due to pain or medication or whatever the case would be, up to 10% of the day.

(AR 114-15). VE Kerkhoff responded that such an individual could not return to the bank teller work that Plaintiff had previously performed but would be able to perform work as a salesperson - general merchandise, Cashier II, and hospital admitting clerk. She also noted that such an individual could not work as a data entry clerk when the ALJ added to the hypothetical that such an individual could use a computer screen frequently, but not more than two thirds of the day. (AR 115-16). Notably, the ALJ did not pose a hypothetical as to the employability of this same individual if confined to working 3.25 hours per day, with breaks, as discussed in the FCE.

Plaintiff's counsel questioned Ms. Kerkhoff on cross examination as to whether an individual who was unable to stand on her feet for two or more hours of an eight-hour workday would be restricted to sedentary work. She replied in the affirmative. Counsel asked whether there would be jobs available to an individual who was restricted to sedentary work and only occasional reaching, fingering, and handling. Ms. Kerkhoff answered that there would not be jobs available to such an individual. With further questioning from counsel, Ms. Kerkhoff testified that there would not be jobs available to one who would be off-task 16% of an eight-hour workday.

Plaintiff's counsel asked about the employability of an individual who had two unexcused absences a month. As was previously noted, Dr. Leifheit opined that Plaintiff would likely have three or more absences a month. VE Kirchhoff testified that such an individual would not be employable as employers generally would not tolerate more than one absence per month. (AR 116-117).

When asked by the ALJ, VE Kerkhoff testified that an individual at the sedentary level, with the restrictions the ALJ outlined would be able to work as a sourcer, table worker, and addresser; all occupations recognized by DOT and for which there were jobs available in significant numbers in the national economy.

**THE ALJ'S DECISION**

The ALJ issued her Decision, finding that Plaintiff had severe impairments of the cervical and lumbar spine, degenerative disc disease, osteoarthritis of the left foot/right shoulder, fibromyalgia, and psoriatic arthritis which significantly limited her ability to perform basic work activities. (AR 30). The ALJ found that Plaintiff's mental impairments of depression and anxiety did not cause more than minimal limitations and were not severe.

The ALJ identified Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except, she can frequently climb ramps/stairs and occasionally climb ladders, ropes or scaffolds; frequently balance and stoop, and occasionally kneel, crouch and crawl; frequently reach bilaterally in all directions, including overhead; may utilize a computer screen frequently during the day- 2/3 of the day; after sitting for 45 minutes, has to stand and move around at the workstation for about 3 to 4 minutes during hours wherein no regular breaks; can occasionally use foot controls on the left; and is expected to be off task up to 10 percent of the workday.

(AR 32).

The ALJ asserted that, while Plaintiff has experienced some limited function, the preponderance of the objective medical and other evidence failed to substantiate an impairment or combination of impairments which warranted greater restrictions. The ALJ determined that Plaintiff's claims as to the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence and other records. The ALJ found "[u]nlike claimant's testimony received at the hearing, the medical file is absent evidence demonstrating any

significant physical or mental deficits that would account for the reported level of limited functionality—or essentially render her unemployable and unable to sustain any gainful activity during the period in question." (AR 36).

The ALJ determined that, other than the cervical disc arthroplasty in July 2019, the medical records showed relatively routine, conservative management and that Plaintiff felt better after the surgery. The ALJ noted that while Plaintiff had, "intermittent" reduction in cervical and lumbar range of motion, the other joints showed normal range of motion. She also indicated that Plaintiff's psoriatic skin lesions were generally mild and stable. As to the fibromyalgia, the ALJ found that there was no consistent evidence of widespread pain involving at least 11 positive tender points. (AR 38). The ALJ noted that a disability finding cannot be based solely on a claimant's subjective complaints or hearing testimony and that Plaintiff's claimed limits in sitting, standing, walking, lifting, and carrying was outweighed by the objective evidence. (AR 37).

### LEGAL STANDARD

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. If a Plaintiff is able to do other work, he is not disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. If an ALJ finds that a Plaintiff is not disabled and not able to return to his prior work, the ALJ must identify evidence that the Plaintiff, given his RFC, age, education, and work experience, can perform other work which exists in significant numbers in the national economy. 20 CFR 404.1512 and 404.1560(c).

The ALJ is to apply a five-step analysis in determining an individual's eligibility for disability benefits. The following issues are to be decided in order:

(1) is the Plaintiff currently employed?;

(2) is the Plaintiff's impairment or combination of impairments severe?;

(3) do his impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling?;

(4) if the impairment has not been listed as conclusively disabling, given the Plaintiff's residual function capacity, is the Plaintiff unable to perform his former occupation?;

(5) is the Plaintiff unable to perform any other work in the national economy given his age, education, and work experience?

The Plaintiff bears the burden of proof until step five when it shifts to the Commissioner to prove the Plaintiff can perform work in the economy. *Inman v. Saul*, No. 20-231, 2021 WL 4079293 at *2 (N.D. Ind. Sept. 7, 2021) (citing § 404.1520); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). If the ALJ finds even one severe impairment at step 2, she is obligated to move on to the remaining steps and consider "the entire constellation of ailments." *Garza v. Kijakazi*, No. 21-2164, 2022 WL 378663 at *2 (7th Cir. Feb. 8, 2022) (citing *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010)).

Under 42 U.S.C. 405(g), the Court has authority to review the Appeals Council's decision, "though review is bound by a strict standard. The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable." *Inman*, 2021 WL 4079293 at *1 (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ's decision must be upheld if supported by substantial evidence and free of legal error. 42 U.S.C. § 405(g). *See Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.

Ct. 1148, 1154 (2019). "Although we review the ALJ's decision deferentially, he must nevertheless build a 'logical bridge' between the evidence and his conclusion." *Behrens v. Berryhill*, No. 16-5348, 2017 WL 4052372, at *6 (N.D. Ill. Sept. 13, 2017) (citing *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). The Court may not replace the ALJ's judgment with its own by reconsidering facts or evidence or making credibility determinations. *Id*.; *Pepper v. Colvin*, 712 F.3d 351, 361–62 (7th Cir. 2013).

## DISCUSSION

Plaintiff asserts that the ALJ's Decision is not based on substantial evidence and that the ALJ failed to build a logical bridge from the evidence to her conclusion that Plaintiff had the ability to perform light duty, full-time work. Plaintiff asserts that the ALJ did not fully review the FCE report and summarily dismissed Mr. Slevin's letter clarifying the FCE report, and that this amounted to reversible error.

In support of her Decision, the ALJ relied on the September 23, 2019, report of State Agency medical consultant, Dr. Kathleen Treanor. Dr. Treanor documented that at the time, Plaintiff was working part-time as a teller and could continue to perform this work. She believed Plaintiff could stand for approximately 6 hours in an 8-hour workday and could frequently climb ramps and stairs, stoop, bend at the waist, kneel, crouch, and crawl. (AR 127 et seq.) The ALJ cited this to support that Plaintiff's complaints of symptom-related intensity, persistence, and functional limitations were not supported in the medical records.

The ALJ also relied on the March 17, 2020, report of State Agency medical consultant, Dr. Michael Nenaber who characterized Plaintiff's medically determinable spine disorders, major joint dysfunction, and fibromyalgia as "severe." (AR 150). Nevertheless, Dr. Nenaber did not find that Plaintiff's symptoms and diminished function were consistently supported in the record.

14

(AR 152-53). He opined that Plaintiff would be able to sit; and stand and/or walk 6 hours in an 8-hour workday. He found Plaintiff able to occasionally kneel, crouch and crawl and frequently able to stoop and climb ramps and stairs. He determined that Plaintiff's reach was limited bilaterally as to "Left in front and/or laterally; Right in front and/or laterally; Left Overhead; Right Overhead." (AR 154-55).

The ALJ did not rely on the information provided in Dr. Leifheit's Multiple Impairment Questionnaires, particularly where it indicated Plaintiff was likely to be absent from work more than three times a month. She indicated, further, that Dr. Leifheit's limitations as to Plaintiff's sitting, standing, lifting, and carrying lacked sufficient objective medical and other support.

The ALJ referred to P.T. Slevin's December 2, 2019, FCE report which she relied on in part. The ALJ relied on the statement, "the Plaintiff should be able to function in the light work demanded level for activity and endurance." She makes no mention of the 3.25 hour workday reference in this same document. While the ALJ discussed Mr. Slevin's June 2020 letter clarifying the FCE Report, she believed the clarification represented a change in opinion, specifically stating that there was no evidence that Mr. Slevin had re-examined Plaintiff in the intervening six months. The ALJ asserted that the clarification essentially altered Mr. Slevin's opinion from Plaintiff being able to work full-time with restrictions, to Plaintiff being able only to work 3.25 hours per day with restrictions. Here, the ALJ apparently failed to appreciate, or at least to address, that this statement was in the original report. The ALJ further noted that Mr. Slevin was not an acceptable medical source. (AR 40).

The Magistrate noted the ALJ's apparently mistaken belief that the June 2020 letter represented an alteration in Slevin's opinion. The Magistrate determined, however, that this did not represent reversible legal error as the ALJ considered both the full-time statement and the

15

3.25 hours per day statement in her Decision. However, the ALJ attributed the 3.25 hours per day statement to the clarification, not to the original FCE Report and discounted it, in part, as having been "prompted by Plaintiff's representative."

> The undersigned further notes the June 19, 2020 "clarification" on the FCE (Functional Capacity Evaluation) by this same source, which was provided at the request of Plaintiff's representative (Exhibit B33F). Pursuant to this clarification, the source seemingly altered the prior evaluation report 6 months prior, now finding, "Given the above information for her activity, positional tolerances, and symptom increases, within a degree of medical certainty, it is my professional opinion that Mary Davis can function on a limited part-time basis (up to 3.25 hours/day) as per the FCE. . . . There is no indication that any reexamination was completed in order to arrive at this conclusion 6 months later.

(AR 40).

It appears that the ALJ's mistaken belief that Slevin had offered an entirely new opinion in the clarification also caused her to view Dr. Jasek's August 7, 2020 record less favorably. On that date, Dr. Jasek wrote, "I have received FCE clarification from PT (physical therapy) and I agree with that." (AR 1138). The ALJ, believing the clarification represented a change in opinion, found Dr. Jasek's opinion unpersuasive, stating, "there is no indication for anything new or concerning on exam the same day that would justify Dr. Jasek's agreement with the FCE clarification, nor does he give any reason as to why he agrees with the FCE clarification." (AR 40).

Here, the ALJ partially discounted the FCE findings, noting the full-time work reference, but not that Plaintiff was only able to engage in activity for 3.25 hours per day, with breaks. While the opinion rendered in the FCE is confusing, if not outright contradictory, the ALJ should have discussed all the findings, not merely those which supported that Plaintiff was able to engage in full-time work. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (finding that the ALJ "must confront the evidence that does not support his conclusion and explain why it was rejected."); *see also Jamie S. v. Kijakazi*, No. 20-3373, 2022 WL 4132445, at *5 (N.D. Ill.

Sept. 12, 2022) (remanding, in part, where ALJ's error called into question whether she had adequately considered the FCE).

While the ALJ cited records to support that Plaintiff had a relatively good result from the July 2019 cervical disc arthroplasty (AR 39), subsequent records showed a symptomatic cervical radiculopathy. *See* Dr. Leifheit's October 21, 2019, record (AR 839, 1019-20); Dr. Jasek's December 9, 2020, record of guarding and discomfort noted at the cervical spine; and Plaintiff's report to State Agency physician, Dr. Taiwo where she complained of throbbing pain into the arms and hands, worse on the right than the left, and reported dropping items from her hands (AR 149 et seq.) The ALJ does not discuss the weight of these findings and despite the consistent findings of loss of cervical and lumbar range of motion, referred to these as "intermittent."

The ALJ did not explain her reasons for her RFC finding that Plaintiff could sit for 45 minutes before needing to stand and move around for 3 to 4 minutes. She did not explain why she believed Dr. Leifheit's findings that Plaintiff could only sit, stand, or walk for less than one hour in an 8-hour workday; and would need 10-minute breaks each hour, were unsupported. In addition, while she relied on the report of State Agency physician Nenaber, he had stated that Plaintiff was limited bilaterally in overhead reaching (AR 154-55), while the ALJ issued an RFC finding that Plaintiff could "frequently reach bilaterally in all directions."

While the opinions of treating source physicians are no longer given controlling weight under 20 C.F.R. § 404.1520c, treating physicians' opinions are due heightened consideration if they are supported by and consistent with other evidence. While the supportability and consistency are the prime considerations, the ALJ may also consider the relationship between the treating physician and the claimant including, the length, extent, and purpose of the treatment relationship; and the treating physician's specialization; as well as any other factors which might

be relevant. § 404.1520c(1) – (5). *Mazza v. Saul*, No. 19-1724, 2020 WL 6909308 at *5 (E.D. Wis. Nov. 24, 2020). *See Inman*, 2021 WL 4079293 at *2 (ALJ's failure to explicitly discuss supportability and consistency requires remand).

Under the supportability requirement, a provider's records must offer objective medical evidence and explanation to support the opinion being offered. *Id.* at *2, citing 20 C.F.R. §§ 404.1520c(c)(1) & 416.920c(c)(1). The more support for the opinion, the more persuasive it will be. Under the consistency requirement, "a provider's opinion … must be, reductively, consistent with the record. *Id*. The more the medical opinion is consistent with evidence from other medical and nonmedical sources, the more persuasive it will be. *Id.* Here, the ALJ did not adequately explain while she found Drs. Treanor and Nenaber's opinions that Plaintiff could stand/walk and sit for six hours more persuasive than those of Drs. Jasek, Leifheit and Plaintiff's own testimony and reports to her treating physicians. In addition, as previously noted, the ALJ failed to address that portion of the FCE which stated that Plaintiff could only engage in activity for 3.25 hours, "not even half of a work day."

Lastly, when the ALJ posed the hypothetical to VE Kerkhoff, she did not ask whether there were jobs available in the national economy for an individual limited to 3.25 hours of work per day, with breaks. *See Biestek*, 139 S. Ct. at 1155 (a vocational expert's testimony can constitute substantial evidence to support an ALJ's finding of job availability at § 404.1520c(5)).

### THE DECISIONS OF THE ALJ AND APPEALS COUNCIL ARE NOT VOID

Plaintiff also asserts that the appointment of Social Security Director Saul violated the separation of powers, as the Commissioner of SSA serves a longer term than the President and cannot be removed by the President except for cause. Defendant does not dispute that "42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the

18

President's authority to remove the Commissioner without cause." (Doc. 16 at 6) (citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021) ("OLC Op."))

Defendant asserts, however, that a plaintiff must show that the unconstitutional statutory removal restriction actually caused her harm. *Collins v. Yellen*, 141 S. Ct. 1761, 1787-89 (2021). Here, Plaintiff does not establish that the adverse decision was the result of the unconstitutional appointment, or the tenure allowed to the Commissioner. As Magistrate Hawley noted, "Plaintiff did not argue that either the former Commissioner of (sic) former Acting Commissioner of SSA played an active role in denying her claim for benefits," or allege that the President would have intervened to prevent the harm if not for the unconstitutional removal clause. (Doc. 18 at 21) (citing *Vicki L.H. v. Kijakazi*, No. 21-032, 2022 WL 1538545, at *6-7 (N.D. Ind. May 16, 2022) (quoting *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183, 2207-08, (2020)). The Court hereby adopts Magistrate Hawley's R&R, and DENIES Plaintiff's motion for summary judgment, as to this issue.

## CONCLUSION

The Court declines to adopt the Magistrate's finding that the ALJ's error in reviewing the FCE was harmless. *See William B. v. Saul*, No.18-50083, 2019 WL 4511544, at *6–7 (N.D. Ill. Sept. 19, 2019) (finding that the failure to adequately evaluate FCE findings "cannot be deemed harmless" unless the decision is overwhelmingly supported in the record and remanding would be a waste of time). The Court here cannot confidently predict that a remand would amount to a waste of time and will, therefore, remand the matter so that the ALJ may re-evaluate the entirety of the December 2019 FCE in accordance with SSR 06-3p, and determine its effect on Plaintiff's RFC and the consistency and reliability of Dr. Jasek's opinion based on the FCE findings.

Plaintiff's motion for summary judgment [12] is GRANTED to this extent but DENIED as to the assertion that the Decisions of the ALJ and Appeals Council are rendered void due to the unconstitutional appointment of the Social Security Commissioner. The Commissioner's motion for Affirmance is GRANTED only as to this issue.

The decision of the Commissioner is REVERSED and REMANDED. On remand, the ALJ should evaluate the December 2, 2019, FCE in accordance with SSR 06-3p and determine whether the limitations provided therein affect Plaintiff's ability to work in full-time employment. The ALJ is also to consider the clarification, determining what weight, if any, to afford it. The ALJ is to issue a revised RFC if deemed necessary; and to obtain supplemental VE testimony, if necessary to determine whether jobs exist in significant numbers for Plaintiff in the national economy. This case is now TERMINATED.

Signed on this 28th day of September, 2022.

s/James E. Shadid
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE